UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA | No. 20 CR 309-1 |
|---|---|
| v. | |
| LARRY JONES | Judge Virginia M. Kendall |

**RESPONSE TO DEFENDANT'S MOTION TO MODIFY BOND CONDITIONS**

The United States of America, through its attorney, John R. Lausch, Jr., United States Attorney for the Northern District of Illinois, respectfully responds to defendant Larry Jones's motion to modify his bond conditions (Dkt. 55) as follows:

1. On June 24, 2020, the grand jury returned an indictment charging Jones with a conspiracy to possess with intent to distribute and distribute 100 grams or more of heroin (Count 1); distribution of heroin on seven occasions (Counts 2 and 4-9); and one count of money laundering (Count 3). Dkt. 1.

2. The evidence against Jones is strong and includes Jones's telephone conversations with co-conspirators that were lawfully intercepted pursuant to court orders and audio/video recordings of Jones distributing heroin to a confidential source ("CS") on seven occasions.

3. Because of Jones's prior conviction for a serious violent felony (attempted murder), for which he served more than 12 months of imprisonment, Jones faces a mandatory minimum sentence of 10 years' imprisonment on Count 1 and a statutory maximum of life imprisonment. Dkt. 26 (851 notice).

4. On June 25, 2020, law enforcement executed the federal arrest warrant on Jones at the residence in Broadview, Illinois, where he lived with his proposed third party custodian Shinesha Houston.

5. On July 2, 2020, the parties had a contested detention hearing before Magistrate Judge Jantz. Dkt. 21. The transcript of that hearing is attached hereto as Exhibit A and also appears at Dkt. 67.

6. At the detention hearing, the government called two law enforcement witnesses to testify about the following topics:

    a. Jones's offer to sell a firearm to the CS (Tr. 17-31), including during a conversation that took place in Ms. Houston's presence (Tr. 20, 27) and during a text message conversation in which Jones sent a photograph of five firearms to the CS (Tr. 30-31); and

    b. following Jones's arrest in June 2020, the recovery of multiple firearms from the bedroom that Jones and Ms. Houston shared at the Broadview residence (Tr. 50-55).

7. Regarding the latter subject, ATF Special Agent Thomas Sheehan testified to the following:

    a. After Jones was in custody, Agent Sheehan asked Ms. Houston if there were any firearms inside the residence. Tr. 50-51. Ms. Houston responded that there were three firearms located in the master bedroom and that she had a concealed carry license. Tr. 51. Upon request, Ms. Houston agreed to direct law enforcement to the firearms in the bedroom. *Id.*

b. In the master bedroom, Ms. Houston first directed agents to her purse, which contained a loaded 9-millimeter pistol. Tr. 52. Ms. Houston then directed agents to the top drawer of a nightstand, which contained another loaded 9-millimter pistol. Tr. 53.

c. Regarding the third pistol, Ms. Houston said it was located inside a safe on the floor of the bedroom closet. Tr. 53. Agents searched the safe and found an empty gun box. Tr. 54.

d. When asked again where the third firearm was located, Ms. Houston said, "Oh, it must be in the drawer." Tr. 54. Agents then searched deeper in the nightstand drawer—behind various papers, including some mail addressed to Jones—and eventually recovered a third loaded 9-millimeter pistol. Tr. 54-55. Upon recovery of that pistol, Ms. Houston said, "Oh, yeah, sometimes I keep it there or in the safe." Tr. 55.

e. Agents advised Ms. Houston they were going to seize all three firearms for further investigation. Tr. 61. Ms. Houston then signed a seized property receipt. Tr. 62.

8. During the government's presentation of evidence, the defense objected to testimony about Ms. Houston's ownership of firearms—including a discrepancy relating to the address she provided when obtaining a FOID card (Tr. 68-69)—and withdrew her as a proposed third party custodian. Tr. 69-70. The defense later proffered Jones's grandmother as a third party custodian—having notified pretrial services, but not the government, about that back-up plan. Tr. 89-90.

9. At the conclusion of the detention hearing, the government argued that Jones presented a danger to the community, in part because of his offers to sell a firearm to the CS and his apparent access to or possession of loaded firearms on the day of his arrest. Tr. 103-105.

10. The government further argued that Ms. Houston was not a suitable third party custodian because, despite her legal ownership of the firearms recovered from the master bedroom, at least two of the firearms were readily accessible to Jones, who was a conviction felon. Tr. 104-105. Ms. Houston's initial inability to identify where the third firearm was located raised two troubling possibilities: (1) she was negligent in storing and securing firearms in a bedroom she shared with a convicted felon; or (2) she was merely the nominal owner of one or more firearms that Jones actually possessed and used. Under either scenario, Ms. Houston was not a suitable third party custodian.

11. As described earlier, the government also presented evidence that Ms. Houston was present at one of the meetings where Jones distributed heroin to the CS and discussed selling a firearm to the CS. Tr. 20, 27. If Ms. Houston was aware of Jones's drug and gun trafficking and simply turned a blind eye to those activities, she is not qualified to monitor his compliance with bond conditions. Conversely, if Ms. Houston was unaware of Jones's drug and gun traficking—even though it was happening her in presence—she is equally unqualified to supervise him while on pretrial release and report any violations to pretrial services.

4

12. Judge Jantz ultimately denied the government's motion for detention and released Jones into the third party custody of his grandmother, subject to home detention and electronic monitoring. Tr. 113-120.

13. According to Jones's motion, his grandmother is at high risk of severe illness from COVID-19 infection because of advanced age and underlying medical conditions. Dkt. 55 at ¶ 2. The government is sensitive to Jones's concern about not wanting to put his grandmother's health at risk. But it was Jones who first proposed his grandmother as a third party custodian in July 2020, when the COVID-19 pandemic had already been a fact of daily life for months.

14. Regarding Jones's proposal to live with Ms. Houston and their son at the Broadview residence, the government opposes that plan. At the detention hearing, the government explained at length why Ms. Houston is not a suitable third party custodian. Nothing about that situation has changed in the last 9 months.

15. In addition, the recently filed pretrial services report raises additional red flags about Ms. Houston's ownership of firearms. Despite signing a property receipt for the three firearms seized in June 2020, Ms. Houston reports that she is unable to find her pink Taurus handgun and assumes it was seized. Attached hereto as Exhibit B are photographs of the three firearms recovered from the Broadview residence in June 2020, which were introduced at the detention hearing as Government Exhibits Pistol 1 and Pistol 2. There is nothing pink on those handguns, so Ms. Houston appears to be referring to a different firearm that she owns and cannot locate.

16. Finally, according to the pretrial services report, Ms. Houston still owns a firearm—namely, a Glock pistol that she stores at her cousin's residence in Indianapolis.

17. In summary, to the extent any modification of Jones's bond conditions is appropriate, Ms. Houston is not a suitable third party custodian. To the contrary, releasing Jones into her custody to live at the Broadview residence would present a danger to the community by putting him back in an environment where he had easy access to multiple loaded firearms before his arrest in June 2020.

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By: */s/ Grayson Sang Walker*

GRAYSON SANG WALKER
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604

**CERTIFICATE OF SERVICE**

I, Grayson Sang Walker, hereby certify that on March 4, 2021, I electronically filed the foregoing **GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO MODIFY BOND CONDITIONS** with the Clerk of the Court for the United States District Court for the Northern District of Illinois by using the Case Management/Electronic Case Files (CM/ECF) system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

By: */s/ Grayson Sang Walker*
GRAYSON SANG WALKER
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-5300