
FILED
1/19/2023
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 20 CR 309-1 |
| v. | |
| LARRY JONES | Judge Virginia M. Kendall |

## PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, JOHN R. LAUSCH, JR., and defendant LARRY JONES, and his attorney, PHILLIP TURNER, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2. The indictment in this case charges defendant with conspiracy to possess with intent to distribute a controlled substance, namely, 100 grams or more of heroin, in violation of Title 21, United States Code, Section 846 (Count 1); money laundering, in violation of Title 18, United States Code, Section 1956(a)(3)(A) (Count 3); and distributing a controlled substance, namely, a quantity of heroin, in violation of Title 21, United States Code, Section 841(a)(1) (Counts 2 and 4-9).

3. Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charge to Which Defendant Is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following count of the indictment: Count 1, which charges defendant with conspiracy to possess with intent to distribute and distribute a controlled substance, namely, 100 grams or more of a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 846; and Count 3, which charges defendant with knowingly conducting and attempting to conduct a financial transaction affecting interstate commerce, involving property represented by a confidential source to be the proceeds of specific unlawful activity, namely, the felonious buying and selling and otherwise dealing in a controlled substance with the intent to promote the carrying on of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(3)(A).

## Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charges contained in Counts 1 and 3 of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct under Guideline 1B1.3:

Count One

Beginning on or about August 6, 2018, and continuing until on or about September 3, 2019, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant LARRY JONES conspired with co-defendants Jamar Spencer and Marsha Fountain, and with others known and unknown, to knowingly and intentionally possess with intent to distribute and distribute a controlled substance, namely, 100 grams or more of a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1), in violation of Title 21, United States Code, Section 846.

Specifically, between approximately August 2018 and September 2019, JONES worked with Marsha Fountain, Jamar Spencer, and others to sell quantities of heroin in and around Chicago, Illinois. During this time, JONES directed Fountain to do the following: store wholesale quantities of heroin; transport heroin to JONES and his associates; collect narcotics proceeds from Spencer and others who sold heroin supplied by JONES; and provide JONES with information she received from street level sellers and customers about the quality of the heroin that JONES supplied.

For example, on or about August 6, 2018, JONES placed a call to Fountain and instructed her to bring him approximately 25 grams of heroin for JONES to sell to a customer who, unbeknownst to JONES and Fountain, was a confidential source ("CS-1") cooperating with law enforcement. Later that day, Fountain met with JONES and

the CS in a vehicle parked on the 400 block of South Cicero Avenue in Chicago. During that meeting, JONES cautioned Fountain about the presence of law enforcement in the area and asked Fountain if she brought "25 or 50" grams of heroin to the meeting. Fountain responded that she brought "25," which JONES understood to mean 25 grams of heroin. Fountain then handed a knotted plastic bag containing approximately 25 grams of heroin to JONES, and JONES then distributed the heroin to CS-1 in exchange for $3,750. JONES acknowledges that $1,875 of the $3,750 paid by CS-1 to JONES was repayment for approximately 25 grams of heroin that JONES "fronted" to CS-1 on or about July 23, 2018.

JONES also sometimes directed Spencer to distribute heroin directly to JONES's customers. For example, on October 24, 2018, JONES directed Spencer to travel to the 3800 block of West Lake Street in Chicago to meet with CS-1. During that meeting, Spencer gave CS-1 approximately 24.8 grams of heroin and received approximately $1,880 in narcotics proceeds from CS-1, which Spencer then gave to JONES.

Finally, JONES acknowledges that, in addition to the August 6 and October 24, 2018, transactions described above, JONES distributed the following quantities of heroin to CS-1: on or about August 15, 2018, JONES distributed approximately 24.8 grams of heroin to CS-1; on or about September 19, 2018, JONES distributed approximately 25 grams of heroin to CS-1; on or about December 18, 2018, JONES distributed approximately 24.9 grams of heroin to CS-1; on or about February 20,

4

2019, JONES distributed approximately 25 grams of heroin to CS-1; and on or about September 3, 2019, JONES distributed approximately 24.5 grams of heroin to CS-1. JONES acknowledges that he received $9,385 in connection with those transactions listed above.

JONES further acknowledges that, for the purpose of computing his sentence under the Sentencing Guidelines, the following conduct that he stipulates constitutes relevant conduct under Guideline § 1B1.3. Specifically, JONES acknowledges that he met Spencer in the early 2000s and that, in addition to heroin, JONES also sold quantities of marijuana, cocaine base, and fentanyl to Spencer during the course of their relationship.

Count Three

On or about August 6, 2018, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, JONES, with intent to promote the carrying on of specified unlawful activity, did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, involving property represented by the CS to be proceeds of specific unlawful activity, namely, the felonious buying and selling and otherwise dealing in a controlled substance, in violation of Title 18, United States Code, Section 1956(a)(3)(A).

Specifically, on August 6, 2018, during the narcotics transaction between the CS and JONES described above, JONES received approximately $3,750 in payment from the CS. JONES acknowledges that approximately $1,875 of that total

5

represented payment to JONES for narcotics previously supplied by JONES to the CS on or about July 23, 2018. JONES further acknowledges that he accepted payment for the purpose of promoting and maintaining his drug dealing relationship with the CS.

## Maximum Statutory Penalties

7. Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

    a. Count One carries a maximum sentence of 40 years' imprisonment, and a statutory mandatory minimum sentence of five years' imprisonment. Pursuant to Title 18, United States Code, Section 3561, defendant may not be sentenced to a term of probation for this offense. This offense also carries a maximum fine of $5,000,000. Defendant further understands that the judge also must impose a term of supervised release of at least four years, and up to any number of years, including life.

    b. Count Three carries a maximum sentence of 20 years' imprisonment. Count Three also carries a maximum fine of $500,000, or twice the value of the monetary instrument or funds involved in the offense, whichever is greater. Defendant further understands that with respect to Count Three, the judge also may impose a term of supervised release of not more than three years.

c. Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty imposed.

d. Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is 60 years' imprisonment. In addition, defendant is subject to a total maximum fine of $5,500,000, or twice the value of the monetary instrument or funds involved in the offense, whichever is greater, a period of supervised release, and special assessments totaling $200.

## Sentencing Guidelines Calculations

8. Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities

among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a. **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2021 Guidelines Manual.

b. **Offense Level Calculations.**

i. <u>Count One and Relevant Conduct</u>

1. It is the government's position that the amount of controlled substances involved in the offense of conviction and relevant conduct for which defendant is accountable, or which was reasonably foreseeable to the defendant, and relevant conduct is approximately 85 grams of cocaine base (the equivalent of 303.54 kilograms of Converted Drug Weight, pursuant to Guideline § 2D1.1, application note 8(D)); 160 to 200 grams of fentanyl (the equivalent of 400 to 500 kilograms of Converted Drug Weight, pursuant to Guideline § 2D1.1, application note 8(D)); 5.57 to 6.04 kilograms of heroin (the equivalent of 5,570 to 6,040 kilograms of Converted Drug Weight, pursuant to Guideline § 2D1.1, application note 8(D)); and 12.71 kilograms of marijuana (the equivalent of 12.71 kilograms of Converted Drug

8

Weight, pursuant to Guideline § 2D1.1, application note 8(D). Pursuant to Application Note 8(B) to Guidelines § 2D1.1, when determining the offense level for an offense involving different controlled substances, each drug is to be converted to its converted drug weight, combined, and then referred to the Drug Quantity Table in § 2D1.1 to obtain the combined offense level. It is the government's position that the combined Converted Drug Weight for the cocaine base, fentanyl, heroin, and marijuana for which defendant is accountable equals approximately 6,286.25 to 6,856.25 kilograms of Converted Drug Weight, which, pursuant to Guideline §§ 2D1.1(a)(5) and (c)(4), results in a base offense level of 32, because it is greater than 3,000 kilograms, but less than 10,000 kilograms of Converted Drug Weight. The defendant disagrees with the government's position and reserves the right to argue for a different total drug quantity calculation.

    2. Pursuant to Guideline § 3B1.1(c), the offense level is increased by 2 levels, because defendant was an organizer, leader, manager, or supervisor in the conspiracy.

    3. Accordingly, it is the government's position that the total offense level for Count One is 34.

  ii. <u>Count Three</u>

    1. The government's position is that, pursuant to Guideline §§ 2S1.1(a)(1), the base offense level is 34, because the defendant

committed the underlying offense and the offense level for that offense can be determined.

2. Pursuant to Guideline § 2S1.1(b)(2)(B), the offense level is increased by 2 levels because the defendant was convicted under Title 18, United States Code, Section 1956(a)(3)(A).

3. Therefore, the government's position is that the total offense level for Count Three is 36.

    iii.    <u>Grouping</u>

1. Pursuant to § 3D1.2(c), Count One and Count Three are grouped together because one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts.

2. Therefore, the government's position is that the defendant's total offense level is 36.

    iv.    If by the time of sentencing the defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct within the meaning of Guideline § 3E1.1(a), defendant should receive a two-level reduction in the offense level. At the present time, the government reserves its position on this adjustment until the time of sentencing.

    v.    Defendant timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for

trial and permitting the Court to allocate its resources efficiently, within the meaning of Guideline § 3E1.1(b). Accordingly, at the time of defendant's sentencing hearing, the government will move for an additional 1-level reduction if the Court determines that defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct within the meaning of Guideline § 3E1.1(a).

c. **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government and stipulated below, defendant's criminal history points equal 0 and defendant's criminal history category is I:

i. On or about April 6, 1998, defendant was convicted of attempted murder in the Circuit Court of Cook County, Illinois (Case No. 97 CR 1538201), and received a sentence of 9 years' imprisonment, which was amended to 8 years' imprisonment on or about August 17, 2000. Pursuant to Guideline § 4A1.2(e)(3), defendant receives zero criminal history points for this sentence.

ii. On or about February 18, 2003, defendant was convicted of possession of a controlled substance in the Circuit Court of Cook County, Illinois (Case No. 02 CR 2338801), and received a sentence of 2 years' imprisonment. Pursuant to Guideline § 4A1.2(e)(3), defendant receives zero criminal history points for this sentence.

d. **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, it is the government's position that if the Court determines that defendant has not clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct with the meaning of Guideline § 3E1.1, the anticipated offense level is 36 which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 188 to 235 months' imprisonment, in addition to any supervised release and fine the Court may impose. While Defendant reserves the right to argue for a different Guidelines calculation at the time of sentencing, defendant acknowledges that he is subject to a statutory minimum sentence of five years' imprisonment.

e. Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall

not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

  f. Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

## Agreements Relating to Sentencing

  10. Each party is free to recommend whatever sentence it deems appropriate.

  11. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

  12. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

13. The parties further agree, pursuant to Title 18, United States Code, Section 3583(d), that the sentence to be imposed by the Court shall include, as a condition of any term of supervised release or probation imposed in this case, a requirement that defendant repay the United States approximately $15,015 as compensation for government funds that defendant received during the investigation of the case.

14. Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

15. Before sentence is imposed, the government will move to dismiss the notice of prior conviction relating to defendant filed pursuant to Title 21, United States Code, Section 851.

16. After sentence has been imposed on the counts to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment as to defendant, including the forfeiture allegation.

### **Acknowledgments and Waivers Regarding Plea of Guilty**

#### **Nature of Agreement**

17. This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 20 CR 309-1.

18. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

19. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a. **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i. The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove

prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

   iii.  If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

   iv.  If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

   v.  At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

   vi.  At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii. At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

b. **Waiver of appellate rights**. Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

20. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

## Presentence Investigation Report/Post-Sentence Supervision

21. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing, including the nature and extent of defendant's cooperation.

22. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

23. For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

24. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

25. Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

26. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

27. Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant,

any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

28. Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

29. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

30. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: _1-19-23_

| | |
|---|---|
| ERIKA CSICSILA (Digitally signed by ERIKA CSICSILA, Date: 2022.12.15 12:29:01 -06'00')<br>Erika L. Csicsila on behalf of<br>JOHN R. LAUSCH, JR.<br>United States Attorney | LARRY JONES<br>Defendant |
| JIMMY ARCE (Digitally signed by JIMMY ARCE, Date: 2023.01.18 15:44:19 -06'00')<br>JIMMY L. ARCE<br>Assistant U.S. Attorney | PHILLIP TURNER<br>Attorney for Defendant |