IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION


| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | NO.  20 CR 309 |
| LARRY JONES, | ) | |
| | ) | Judge Virginia M. Kendall |
| Defendant. | ) | |


## DEFENDANT LARRY JONES' SENTENCING MEMORANDUM


Larry Jones, by his attorney, Phillip A. Turner, respectfully submits the following as his sentencing memorandum in this matter so that an appropriate sentence considering Title 18 United States Code, Section 3553(a) is imposed.

Larry Jones has pled guilty to conspiracy to possess with intent to distribute heroin and money laundering.  In this case, Larry Jones is subject to five-year mandatory minimum sentence.  Larry Jones was taken into federal custody after he pled guilty on January 19, 2023.  He is in custody at the Jerome Combs Detention Center for Kankakee County.

As this Court is aware, in **United States v. Booker,** 543 U.S. 220 (2005), the United States Supreme Court held that the mandatory application of the

United States Sentencing Guidelines was unconstitutional and that the guidelines were advisory. The guidelines are only part of the analysis pursuant to Title 18 United States Code, Section 3553(a) which directs a sentencing court to impose a sentence which is "sufficient, but not greater than necessary." In addition, the Seventh Circuit Court of Appeals has remarked that the departure methodology is obsolete in light of **Booker**. See, **United States v. Laufle,** 433 F.3d 981, 986 (7th Cir. 2006). The Seventh Circuit has expanded upon the analysis which is to be undertaken in applying the Section 3553 factors. In **United States v. Warner**, 792 F.3d 847 (7th Cir. 2015), the Seventh Circuit of Appeals reviewed the propriety of a sentence of probation for an extremely wealthy man who had by sophisticated and fraudulent means evaded $5.6 million in United States taxes by hiding approximately $107 million in taxable income in secret Swiss bank accounts. The existence of the Swiss bank accounts and the funds contained in those accounts were hidden from the United States Department of Treasury, Internal Revenue Service. In addition to hiding the money, defendant Warner instructed his Swiss bankers not to send him any correspondence and to destroy all the account records. When the United States government concluded an agreement with one of the Swiss banks which would have revealed defendant Warner's secret Swiss account, he

transferred the funds to another Swiss bank and used a Liechtenstein shell entity to hide his ownership of the funds. Warner perpetrated this tax evasion scheme for approximately 12 years. When the United States Department of Justice began to investigate and prosecute this type of offshore tax evasion, a grand jury subpoena was served on Warner for the records of his offshore banking records. Warner resisted and fought the grand jury subpoena; however, he was ultimately ordered by the courts to comply. **In re Special Feb. 2011-1 Grand Jury Subpoena Dates Sept. 12, 2011**, 691 F.3d 903, 909 (7th Cir. 2012), cert. denied, 133 S. Ct. 2338 (2013). Obviously, defendant Warner was very wealthy and had a privileged life with no explanation for his criminal conduct other than insatiable greed. Despite Warner's long term sophisticated, premeditated and egregious conduct, the government filed only a one-count felony information charging Warner with willful tax evasion in violation of 26 U.S.C. Section 7201. Defendant Warner had no prior convictions, and the resulting guidelines calculations yielded an advisory guideline range of 46 to 57 months imprisonment. At sentencing, the district court was appraised of the charitable causes to which defendant Warner had given money which of course, was easy for Warner to do. The district court sentenced defendant Warner to two years' probation with community service and a fine of

$100,000.00. The government appealed to the Seventh Circuit Court of Appeals arguing that the sentence was too lenient, and that defendant Warner should have been incarcerated. The Seventh Circuit Court of Appeals rejected the government's arguments and affirmed the sentence of probation. In the course of affirming the sentence of probation, the Seventh Circuit Court of Appeals engaged in an analysis of the significance of the sentencing guidelines and the sentencing factors set forth in Title 18 United States Code Section 3553. The Seventh Circuit initially noted that the crimes to which the defendant pleaded guilty did not expressly require the district court to send the defendant to prison. The Court of Appeals went on to state that in reviewing the Section 3553 factors "[a]fter **United States v. Booker**, however, the guidelines are merely advisory. 543 U.S. 220, 245 (2005)." The appellate court citing **Rita v. United States**, 551 U.S. 338, 351 (2007) and **Gall v. United States**, 552 U.S. 338, 351 (2007) indicated that the guidelines are to be considered, but not to be given much weight. "The open-endedness of the section 3553(a) factors leaves ample room for the court's discretion." Thus, the district court's imposition of a sentence of probation in the case of defendant Warner when all factors pointed to a sentence of incarceration was a proper exercise of the district court's discretion. In addition, **Gall v. United States**, 552 U.S. 38, 48 (2007)

recognized that probation represents a substantial restriction on an individual's liberty. The Supreme Court recounted that a probationer cannot move, change jobs, associate freely and generally has restricted freedom.

It is respectfully requested that the advisory guidelines be applied to Larry Jones with same thoughtfulness as they were applied to defendant Warner. Larry Jones acknowledges that he has been involved in selling illegal drugs. He acknowledged in the plea agreement that he, Jamar Spencer, and Marsha Fountain had other narcotics activity besides what is charged in this indictment. It is not to the extent that Jarmar Spencer is alleging. Counsel has requested from the government any books and records to corroborate Jamar Spencer's assertions. There are no records. In summary, this is a matter where three individuals, Larry Jones, Jamar Spencer, and Marsha Fountain agreed together, and worked together, to sell drugs. All three defendants were of equal stature in the matter doing what they needed to do to try to make money from the sale of heroin. Larry Jones knew a person he could call to get heroin. Marsha Fountain and Jamar Spencer knew how to mix drugs and had methods of distribution. Attached is the government's sentencing memorandum regarding defendant Marsha Fountain for comparison purposes. They did not make much money. Larry Jones is not

trying to depreciate the seriousness of his offense or conduct, but he wants the court to know the truth.

Counsel has spent many hours speaking with Larry Jones so that counsel could convey to the court what Larry Jones wants said to the court even though he is unable to articulate the thoughts for himself.

Larry Jones acknowledges that he has a very serious prior record. As the court can discern from reviewing his history that he had no structure in his life as a child. His parents were involved in drugs and abandoned him when he was a child. The only constant adult in his life was his great grandmother. He grew up in an environment of drugs, violence, and poverty. The attempt murder case which Larry Jones had when he was 16 years old is an example of the early stages of his life. The case arose from an after-school confrontation between Larry Jones and his friends and another group of boys. Larry Jones and a boy in the rival group were fighting and struggling over a gun. The gun discharged in the struggle hitting the boy with who he was fighting and another boy. Another example is the brawl in which Larry Jones was involved which resulted in blindness in his left eye. This brawl occurred in 2003 when he was 23 years old. Again, Larry Jones was fighting with some other young men. One of the individuals came from behind him and hit him on the left side of his face near his left eye. Larry

Jones suffered nerve damage which caused him to become blind in his left eye.

Larry Jones has great difficulty reading and writing. Counsel has helped him read and understand the documents in this case. His son's mother helped him compose the letter which will be submitted to this court. He has not completed high school. He left school after the ninth grade. His reading and comprehension skills are not at a ninth-grade level. He was not promoted to the ninth grade because he had achieved the appropriate proficiency. Counsel has tried to obtain Larry Jones earlier school records which counsel hoped would contain an Individual Assessment Plan, commonly called an "IAP." Counsel was unable to obtain the elementary school records. While on home confinement, Larry Jones had a meaningful and legitimate job. He was proud of his work and himself. His son worked with him. It allowed him to give his son a positive example and spend time together doing something positive. However, while working, Larry Jones's lack of education hindered him in many ways. He had difficulty in communicating with people not from his community and with mathematical concepts. He has realized that he has many shortcomings. He is now very eager to finish high school and learn what he should have learned earlier. He would like to learn a trade so that he can support himself and be a

positive member of society. He understands that he has done wrong things in the past and he takes responsibility for what he has done. He desires to go forward and become a better person.  Larry Jones agrees that he must be accountable for what he has done and that he must be punished. He intends to use his time in prison in a productive manner    I am attaching a copy of the letter from his last employer which was previously submitted to the court.      This case has had a great impact on Larry Jones.  He has achieved some meaningful maturity. As the court is aware, since his arrest for this matter on June 25, 2020, he has been on home detention. When he had his job, he was allowed to go to work and to go to church on Sunday. His grandmother allowed him to stay at her house although she did not want him in her house.   He did not have any violations while on the home confinement.  He thought about his life.  He thought about what he has done and all that he has not done. He thought about the impact of his conduct on his family and his community.

OBJECTIONS TO PRESENTENCE  REPORT

   Defendant objects to the reference in paragraph 10, to the Black P. Stone street gang and the statement by Special Agent Paul Daou that Larry Jones is a "'high ranking and respected member'" of the Black P. Stone street gang. Larry Jones knows people in his neighborhood who are allegedly members

of the Black P. Stone gang.  Larry Jones has never undergone the initiation procedure to become a member of that gang.  Counsel for Larry Jones has requested from the government all documents which support this assertion of membership along with the assertion that Larry Jones is "high ranking" and a "respected" member.  Counsel has not received anything from the government.  Larry Jones requests that all references to Black P. Stones be removed from the pre-sentence report.  The entire second sentence in paragraph 10 should be removed. This sort of allegation in the report will be viewed in a very negative light by the United States Bureau of Prisons (BOP) and could cause Larry Jones to serve his sentence in a much more restrictive BOP facility and result in Larry Jones being ineligible for various programs in the BOP.  This comment and the resulting punitive actions by the BOP constitute a violation of due process.

Defendant objects to paragraph 11.  Larry Jones agrees that he and the other individuals distributed 174 grams of heroin and that he had other transactions with the co-defendants. There are no records.  Defendant Spencer had other sources of heroin as well as other drugs such as ecstasy, fentanyl, cocaine and marijuana.  Larry Jones is not trying to depreciate the seriousness of his offense.  The amounts of drugs as relative conduct are overstated. In addition, defendants Spencer and Fountain brought some

amounts fentanyl. They were knowledgeable as to how to mix the fentanyl with heroin. Larry Jones had a source of heroin and obtained the heroin for the transactions in the indictment.

Defendant objects to the reference to his proffer in 17. The government agreed that the proffer information would not be used in aggravation. Agent Daou is violating the proffer agreement by characterizing Larry Jones's proffer in a negative manner to aggravate Larry Jones's sentence. Larry Jones had no intention of telling anyone that he engaged in a proffer since the government informed him that his proffer was inadequate. This reference to his proffer may jeopardize Larry Jones's life and the lives of family members while providing no benefit to Larry Jones. Larry Jones respectfully requests removal of paragraph 17 from the report.

OFFENSE LEVEL COMPUTATION

As indicated earlier, Larry Jones is not denying that he had other narcotics transactions. The amounts attributed are overstated. There are no records. Larry Jones would suggest that the court use the amount of the drugs in the indictment which according to the government is 178 grams of heroin. In addition, pursuant to paragraphs e and f on pages 12-13 of the plea agreement, Larry Jones would suggest that all the defendants were equally capable. No one was in charge, the boss or a leader. This was a situation of

three people working together to sell heroin.  This designation of "leader" or "supervisor" will make Larry Jones ineligible for BOP programs he needs for rehabilitation.

It is respectfully requested that this Court impose the following sentence in this matter in light of the Section 3553 factors and the totality of the circumstances of this case:

A term of imprisonment of 5 years followed by 4 years of supervised release. This is more than twice the prison term of co-defendant Marsha Fountain who received a prison term of 20 months followed by 1 year of supervised release. This term will allow for significant punishment, deterrence for Larry Jones as well as general deterrence. It will provide Larry Jones with the structure and opportunity to pursue his educational goals.  He must learn to read and write.  Larry Jones has been on home incarceration since June 25, 2020 without any violations.  A five-year imprisonment sentence gives him credit for the home incarceration. In addition, since his guilty plea on January 19, 2023, Larry Jones has been in custody at the Jerome Combs Detention Center of Kankakee County.  There are no educational programs available to him there and very limited recreation. Generally, there are no outdoor activities.  Also, we would respectfully request that the court recommend that Larry Jones be allowed to

participate in the BOP Residential Drug Abuse Program to address his alcohol and drug use issues.    Finally, it is respectfully requested that the court recommend that the BOP designate Larry Jones to a facility where he can have access to educational programs and training in a trade.

Respectfully submitted,
Phillip A. Turner_____
Phillip A. Turner
Attorney for defendant
20 North Clark Street
Suite 3300
Chicago, Illinois 60602
312-899-0009
pturner98@sbcglobal.net

CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that in accordance with Fed.R.Civ.P.5, LR 5.5 and the General Order on Electronic Case Filing (ECF), the following document:

**<u>LARRY JONES'S SENTENCING MEMORANDUM</u>**

was served pursuant to the district court's ECF system as to ECF filers.

Respectfully submitted,

Phillip A. Turner_____
Phillip A. Turner
Attorney for defendant
20 North Clark Street
Suite 3300
Chicago, Illinois 60602
312-899-0009
pturner98@sbcglobal.net