UNITED STATES OF AMERICA
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MARSHA FOUNTAIN | No. 20 CR 309-2<br><br>Judge Virginia M. Kendall |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The UNITED STATES OF AMERICA, by JOHN R. LAUSCH, Jr., United States Attorney for the Northern District of Illinois, respectfully submits its sentencing memorandum with respect to defendant MARSHA FOUTAIN. For the reasons set forth below, a within-Guidelines sentence of 46 months' imprisonment is warranted and appropriate.

**I. OFFENSE CONDUCT AND RELEVANT CONDUCT[1]**

Beginning on or about August 6, 2018, and continuing until on or about September 3, 2019, defendant Marsha Fountain conspired with co-defendants Larry Jones, Jamar Spencer, and with others known and unknown, to knowingly and intentionally possess with intent to distribute and distribute a controlled substance, namely, a quantity of a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance.

Specifically, between approximately August 2018 and September 2019, Fountain worked with Larry Jones, Jamar Spencer, and others to sell quantities of

---

[1] Unless otherwise noted, the following facts regarding the offense of conviction and relevant conduct are derived from the factual basis section of the plea agreement. Dkt. 140 at 2-5.

heroin in and around Chicago. During this time, at the direction of Jones, Fountain stored wholesale quantities of heroin; transported heroin to Jones and his associates; collected narcotics proceeds from Spencer and others who sold heroin supplied by Jones; and provided Jones with information she received from street level sellers and customers about the quality of the heroin that Jones supplied.

For example, on August 6, 2018, Fountain received a telephone call from Jones and agreed to bring him approximately 25 grams of heroin for Jones to sell to a customer who, unbeknownst to Fountain and Jones, was a confidential source ("CS") cooperating with law enforcement. Later that day, Fountain met with Jones and the CS in a vehicle parked on the 400 block of South Cicero Avenue in Chicago. During that meeting, as Fountain sat in the backseat of the vehicle, Jones cautioned Fountain about the presence of law enforcement in the area and asked her if she brought "25 or 50." Fountain understood Jones to be asking her whether she had brought 25 or 50 grams of heroin to the meeting. Fountain responded that she brought "25," by which she meant 25 grams of heroin. Fountain then handed a knotted plastic bag containing approximately 25 grams of heroin to Jones, who gave the heroin to the CS.

On September 3, 2019, Fountain again agreed to bring approximately 25 grams of heroin to Jones to sell to the CS. Later that day, Fountain met with Jones in her vehicle while parked on the 5400 block of West Chicago Avenue in Chicago. During that meeting, Fountain gave Jones a knotted plastic bag containing approximately 24.5 grams of heroin, which Jones then gave to the CS. Fountain acknowledges that

the total amount of controlled substances involved in the charged conspiracy that she possessed with intent to distribute and distributed, or which was reasonably foreseeable to her, was at least approximately 49.5 grams of heroin

In addition, according to co-defendant Jamar Spencer, Fountain also worked with Jones to process and package heroin and fentanyl for distribution in approximately 2019.[2] For example, on approximately four or five occasions, Spencer met with Jones and Fountain at an apartment in the vicinity of West Monroe Street and Central Park Avenue in the Garfield Park neighborhood of Chicago ("Garfield Park Apartment"). During their four or five meetings at the Garfield Park Apartment, Spencer observed Fountain open a backpack containing various narcotics processing supplies, including a blender, scales, baggies, face masks, and gloves. According to Spencer, Fountain would take quantities of fentanyl and combine it with heroin and cutting agents (such as Dormin and Xanax pills) to create a heroin/fentanyl mixture that weighed approximately 40 grams. In total, during his four or five meetings with Jones and Fountain at the Garfield Park apartment, Spencer observed Fountain prepare approximately 160 to 200 grams of heroin/fentanyl.

Finally, on one occasion in approximately 2019, Spencer met Fountain at a restaurant in the vicinity of West Madison Street and North Lotus Street. During that meeting, Spencer received approximately 50 grams of raw heroin from Fountain,

---

[2] *See* Dkt. 118 (Spencer Plea Agreement) at 8.

3

which she removed from her bra, handed to Spencer, and directed him to bring to the Garfield Park apartment later that night.

## II. ADVISORY GUIDELINES RANGE

The government agrees with Probation's calculation of the applicable Guidelines: total offense level of 23 and criminal history category I, which results in an advisory range of 46 to 57 months.[3]

*Offense Level*

The government has reviewed the criminal history and offense level calculations set forth in the Presentence Investigation Report ("PSR") submitted by the United States Probation Office. In its version of the offense, the government noted that the base offense level for the offense of conviction was 18, pursuant to Guideline §§ 2D1.1(a)(5) and (c)(11) because the amount of controlled substances involved in the indicted conspiracy for which Fountain is accountable is approximately 49.5 grams of heroin, which is more than 40 grams, but less than 60 grams of heroin. However, the plea agreement and government's version of offense did not account for the relevant conduct outlined in Jamar Spencer's plea agreement. More specifically, Spencer personally observed Fountain mix approximately 160 to 200 grams of heroin with an unknown amount of fentanyl and, on a separate occasion, provided Spencer with 50 grams of raw heroin.

---

[3] As discussed further below, the plea agreement and government version of offense contain a different, non-binding Guidelines calculation of 18 to 24 months' imprisonment due to an error in calculating defendant's offense level, which did not include the relevant conduct outlined in Jamar Spencer's plea agreement. *See* PSR ¶¶ 21-22.

4

When combined with the 49.5 grams of heroin charged in the indictment, Fountain is responsible for between 499.5 and 599.5 kilograms of converted drug weight, which is at least 400 kilograms but less than 700 kilograms of converted drug weight, resulting in a base offense level of 26. With acceptance of responsibility, Fountain's total offense level is 23.

*Criminal History*

With respect to defendant's criminal history, the government agrees that Fountain's two prior criminal convictions, including a conviction for manufacture/delivery of heroin and aggravated unlawful use of a weapon, are not assigned criminal history points due to the age of the convictions.

Accordingly, the government agrees with Probation that, given Fountain's total offense level of 23 and criminal history category of I, the advisory Guidelines range is 46-57 months' imprisonment.

### III. THE FACTORS SET FORTH IN SECTION 3553 WARRANT A SENTENCE WITHIN THE GUIDELINES RANGE OF 46 TO 57 MONTHS

Sentencing has four purposes: retribution, deterrence, incapacitation, and rehabilitation. *See United States v. Milbourn*, 600 F.3d 808, 812 (7th Cir. 2010). Title 18, United States Code, Section 3553(a), sets forth the facts courts are to consider in fashioning a sentence that is sufficient but not greater than necessary to comply with these purposes. First, however, the Court must calculate the applicable Guidelines range, which provides a starting point and initial benchmark for sentencing. *Gall v. United States*, 552 U.S. 38, 49-50 (2007); *see also* 18 U.S.C. § 3553(a)(4). Although the Guidelines are advisory, "[a]s a matter of administration and to secure nationwide

5

consistency, the Guidelines should be the starting point and the initial benchmark." *Id.* at 49. Next, the Court must consider the other § 3553(a) factors. *United States v. Omole*, 523 F.3d 691, 697 (7th Cir. 2008). These factors include the need "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(A)-(D).

**A.      The Seriousness of the Offense**

Drug trafficking is a crime that plagues this city and this district. While the indictment charged Fountain with conspiring on only two occasions to distribute heroin, Jamar Spencer's plea agreement make clear that Fountain's drug dealing activities were far more extensive. In fact, according to Spencer's plea agreement, Fountain not only helped to distribute narcotics, she was also co-defendant Jones's personal "chemist" who helped to mix and package the drugs for distribution. PSR ¶ 9. Fountain was also Jones's connection to a supply source for fentanyl. *Id.*

As it relates to the offense of conviction, in 2017 and 2018, there were 1,589 opioid-related deaths in the city of Chicago, along with an additional 685 opioid-related deaths in suburban Cook County.[4] Fountain's conduct in distributing heroin and fentanyl added to an already devastating epidemic of opioid addition.

---

[4] *See* https://cookcountypublichealth.org/wp-content/uploads/2020/09/2017_2018-Joint-Opioid-Brief.pdf (last visited October 7, 2022).

6

Defendant's conduct posed a serious risk to the safety of the community already grappling with the devastating effects of heroin and fentanyl.

**B.     History and Characteristics of Defendant**

Defendant's history and characteristics justify a sentence within the Guidelines. Although Fountain's documented criminal history is relatively sparse, the offense conduct and relevant conduct make clear that her criminal history points understate her level of criminal culpability. The sheer quantity of drugs that Fountain is responsible for distributing or conspiring to distribute suggests that she had not just recently entered the drug trade. In fact, Fountain was familiar enough with heroin to mix, package, and distribute it for herself and others, all while being entrusted by co-defendant Jones to handle and manage relatively large quantities of heroin. Fountain's collection of drug proceeds on behalf of Jones also suggests a relatively high-level of involvement and trust of Fountain within Jones's drug trafficking enterprise. Moreover, Fountain's relative lack of steady employment history also suggests that she subsisted off of her drug trafficking activities for a longer period of time than her criminal history reflects.

The government acknowledges that while Fountain enjoyed the support of two loving parents while growing up, she experienced some hardship and traumatic events in her lifetime, including abuse in her teenage years and again later in life. However, given the seriousness of the offenses at issue, a sentence within the advisory guidelines range sufficiently accounts for this § 3553(a) factor.

7

### C. The Need to Protect the Public and for General Deterrence

A sentence within the Guidelines range is necessary to promote respect for the law, to afford adequate specific deterrence of this defendant, and to provide a just punishment. As discussed above, Fountain's conduct involved the distribution of a highly addictive and deadly substance, and a Guidelines sentence is necessary to provide a just punishment for this serious conduct. A sentence within the Guidelines range is necessary to provide specific deterrence to Fountain and promote respect for the law by sending a clear message that those who threaten the well-being and safety of others will be held to account for their conduct.

### IV. CONDITIONS OF SUPERVISED RELEASE

Supervised release is extremely important in this case. The government agrees with all of the mandatory and discretionary and special conditions of supervised release recommended by Probation. All of these conditions should be imposed on the basis that they will facilitate supervision by the probation officer, promote defendant's respect for the law, and deter him from committing future crimes. Lastly, the conditions will support Fountain's rehabilitation and reintegration into the community, ensure that she is engaged in lawful pursuits upon release from prison, in light of defendant's history and characteristics.

## V. CONCLUSION

Based on the foregoing, the government respectfully requests that this Court sentence Fountain to a within-Guidelines sentence of 46 months' imprisonment and 3 years of supervised release.

Respectfully submitted,

JOHN R. LAUSCH, Jr.
United States Attorney

By: s/ *Jimmy L. Arce*
Jimmy L. Arce
Assistant United States Attorney
219 South Dearborn Street
Chicago, IL 60604
(312) 353-8449
jimmy.arce@usdoj.gov

Dated: October 7, 2022